IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ALVIN JEROME POLK                                                              PLAINTIFF
ADC #185014

v.                                        4:24CV01080-DPM-JTK

A. STRATFORD, et al.                                                           DEFENDANTS

PROPOSED FINDINGS AND RECOMMENDATIONS

INSTRUCTIONS

The following recommended disposition ("Recommendation") has been sent to United

States District Judge D.P. Marshall Jr.  Any party may file written objections to all or part of this

Recommendation.  If you do so, those objections must: (1) specifically explain the factual and/or

legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14)

days of this Recommendation.  By not objecting, you may waive the right to appeal questions of

fact.

DISPOSITION

I.      Introduction

Alvin Jerome Polk ("Plaintiff") currently is incarcerated at the Barbara Ester Unit of the

Arkansas Division of Correction ("ADC").  His claims in this case arise from the time he was in

custody as a convicted prisoner at the Pulaski County, Arkansas, Detention Center (the "Detention

Center").  (Doc. No. 2 at 4).  Plaintiff sued Deputies A. Stratford, A. Holmes, Q. Maxfield, Chris

Santee, and T. Williams, along with Lieutenants Allen and A. Lee (collectively, "Defendants") in

their personal and official capacities pursuant to 42 U.S.C. § 1983.  (Id. at 1-3).  Plaintiff claims

he was subjected to unlawful conditions of confinement, including a leaky toilet, black mold, and lockdown for up to five days a week.  (Id. at 5-8).

Plaintiff's sewage related claims were dismissed for failure to exhaust administrative remedies.  (Doc. Nos. 38, 45, 46).

Plaintiff's claims in connection with black mold and lockdown remain pending.

Defendants filed a Motion for Summary Judgment on the merits of Plaintiff's claims, Brief in Support, and Statement of Facts. (Doc. Nos. 67- 69).  On April 16, 2026, the Court directed Plaintiff to respond to Defendants' Motion within 30 days, or by May 16, 2026.  (Doc. No. 70). The Court advised Plaintiff that failure to comply with the Order would result in all facts set forth in Defendants' summary judgment papers being deemed admitted, or the dismissal of the action without prejudice for failure to prosecute.  (Id.)  To date, Plaintiff has not filed a response.

After careful consideration and for the reasons explained below, I recommend Defendants' Motion be granted.

## II.    Plaintiff's Pending Claims

Plaintiff's Complaint is the operative pleading in this action.  (Doc. No. 2).  Plaintiff says "S Unit [cell] 416 and every shower" has "extreme black mold in them that is very unhealthy for [him]."  (Id. at 6).  Plaintiff was locked down more than five days a week in these conditions.  (Id. at 5, 6, 8).

Plaintiff asserts that between September 28, 2024, and November 5, 2024, he alerted Defendants to the horrible living conditions.  (Id. at 7).   Each Defendant said he would put in a maintenance request, but the problems were never remedied.  (Id.).  Instead, Plaintiff was moved to the R Unit where there were also "bad living conditions."  (Id.).

Plaintiff seeks damages.  (Doc. No. 2 at 9).

2

**III.    Summary Judgment Standard**

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).  "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"  Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)).  "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135.  Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit."  Id.

In addition, "[a]ll material facts set forth in the statement (of undisputed material facts) filed by the moving party...shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ."  Local Rule 56.1, Rules of the United States District Court for the Eastern and Western Districts of Arkansas.  Failure to properly support or address the moving party's assertion of fact can result in the fact considered as undisputed for purposes of the motion. Fed. R. Civ. P. 56(e).

**IV.    Discussion**

Plaintiff alleges Defendants subjected him to unlawful conditions of confinement.  (Doc. No. 2).  Defendants argue they are entitled to summary judgment on Plaintiff's personal capacity

claims based on qualified immunity because Plaintiff cannot establish a violation of his clearly established rights.  (Doc. No. 68 at 16 -19).  Defendants further maintain summary judgment in their favor is appropriate on Plaintiff's official capacity claims because Plaintiff cannot establish that a Pulaski County policy or practice was the moving force behind the alleged violation of his rights.  (Id. at 19-23).

### A.        Uncontested Material Facts

As an initial matter, the Court notes that Plaintiff has not filed a response to Defendants' Motion.   He has not controverted any material fact set forth by Defendants in their statement of undisputed material facts.  Accordingly, all material facts submitted by Defendants (Doc. No. 69) are deemed admitted.  Local Rule 56.1(c); Fed. R. Civ. P. 56(e).

Arkansas Mold and Water performed a Mold Analysis at the Detention Center on January 6, 2023.  (Doc. No. 69 at ¶ 1; Doc. No. 69-6).  A small amount of toxic mold was found in the downstairs area of the Detention Center, which had not housed inmates for some time.  (Doc. No. 69 at ¶ 35; Doc. No. 69-6; Doc. No. 69-1 at ¶ 6).   No Defendant was aware of toxic black mold in any area housing inmates.  (Doc. No. 69 at ¶¶ 35, 41, 50, 59, 67, 76, 83, 91; Doc. No. 69-1 at ¶ 6; Doc. No. 69-10 at ¶ 3; Doc. No. 69-11 at ¶ 3; Doc. No. 69-12 at ¶ 3; Doc. No. 69-13 at ¶ 2; Doc. No. 69-14 at ¶ 3; Doc. No. 69-15 at ¶ 3; Doc. No. 69-16 at ¶ 2).

The Arkansas Department of Public Safety Criminal Detention Facilities Review Committees inspected the Detention Center on November 2, 2023.  (Doc. No. 69 at ¶ 2; Doc. No. 69-8 at 1-10).  The Arkansas Department of Public Safety Criminal Detention Facilities Review Committees inspected the Detention Center again on November 12, 2024.   (Doc. No. 69 at ¶ 16; Doc. No. 69-8 at 11-19).

<u>Detention Center Policies</u>

The Detention Center has policies and procedures in connection with cleaning and cleaning supplies.  Section IV.C.1 of the Control of Tools, Hazardous (Caustic) Materials, and Cleaning Supplies Policy states: Deputies will provide inmates with the following cleaning supplies and materials to assist them in cleaning their housing units and rooms: broom(s); mop(s) and mop bucket(s); non-toxic premixed cleaning solution; shower and commode brushes; rags and/or paper towels for dusting and cleaning windows, etc.  (Doc. No. 69 at ¶ 100; Doc. No. 69-9 at 10).  The Warehouse Manager will supply each housing unit with the necessary cleaning supplies and non-toxic premixed cleaning solutions to maintain a clean and sanitary housing unit.  (Doc. No. 69 at ¶ 101; Doc. No. 69-9 at 10).

At least once per hour, deputies will conduct routine inspections of inmate living areas to maintain the security and sanitation of the facility and to prevent the introduction, hoarding, or distribution of contraband throughout the facility by inmates. (Doc. No. 69 at ¶ 102; Doc. No. 69-9 at 15).   Security inspections will include, but are not limited to, the physical/visual inspection of windows; door(s); bathroom facilities and fixtures; locking devices; furnishing; ceilings and walls; fire prevention devices; and any other physical structure of the unit. (Doc. No. 69 at ¶ 103; Doc. No. 69-9 at 15).     Security inspections and discrepancies of immediate concern to safety or security will be immediately reported to the zone supervisor and recorded on a written incident report as well as on the appropriate unit inspections form(s) by the deputy.    (Doc. No. 69 at ¶ 104; Doc. No. 69-9 at 26).    To maintain the safety of the facility and promote the health and wellbeing of staff, inmates, and visitors, facility officials will ensure that the Detention Center conforms to applicable rules and regulation pertaining to environmental sanitation and hygiene. (Doc. No. 69 at ¶ 105; Doc. No. 69-9 at 22).

Daily housekeeping/sanitation inspections will be conducted by the staff to ensure the cleanliness of the facility. (Doc. No. 69 at ¶ 106; Doc. No. 69-9 at 22). The supervisor on duty is responsible for conducting a daily sanitation inspection of the facility to ensure the cleanliness and appearance of all areas, including inmate living areas. (Doc. No. 69 at ¶ 107; Doc. No. 69-9 at 23). Deputies assigned to each shift are responsible for conducting inspections of their assigned units during their security rounds to ensure the cleanliness of the facility. (Doc. No. 69 at ¶ 108; Doc. No. 69-9 at 23). Detention Center Environmental Sanitation/General Housekeeping Policy states:

> Inmates will be responsible for cleaning their inmate living areas within the facility, including: all cells, dayrooms, and inmate bathroom facilities… Deputies will be responsible for providing inmates with adequate cleaning supplies to enable them to clean areas within the facility. Deputies will be responsible for supervising inmates at all times, while cleaning, to ensure that tasks are being completed as assigned.

(Doc. No. 69 at ¶ 109; Doc. No. 69-9 at 24). Unsafe or unsanitary conditions or practices will be addressed and corrective action will be taken. (Doc. No. 69 at ¶ 111; Doc. No. 69-9 at 26).

At the Detention Center, unit cleanup, which included cleaning showers and toilets, was usually conducted around 9:30 p.m. (Doc. No. 69 at ¶ 37; Doc. No. 69-1 at 8). Every Tuesday, cleaning supplies, including new mop-heads, rags, paper towels, DC-33 cleaning solution, etc., were issued to each unit to be used for the week. (Doc. No. 69 at ¶ 38; Doc. No. 69-1 at 9; Doc. No. 69-3 at 5).

Plaintiff's Complaint contains allegations arising from the time when he was housed in the S and R Units at the Detention Center.

S Unit. Plaintiff was housed in S Unit Cell 416L from September 27, 2024, to November 7, 2024. (Doc. No. 69 at ¶ 5; Doc. No. 69-5). Cell 416L is located on the upper level of S-Unit. (Doc. No. 69 at ¶ 36; Doc. No. 69-1 at ¶ 7).

On September 29, 2024, Deputy Trimble entered a "Room to Room Cleanup" note, stating: "Room to room cleaning completed for lower level of unit."  (Doc. No. 69 at ¶ 6; Doc. No. 69-7 at 3).  On October 5, 2024, Defendant Maxfield entered a "Room to Room Cleanup" note, stating: "Completed."  (Doc. No. 69 at ¶ 9; Doc. No. 69-7 at 2).  On October 19, 2024, Deputy Reynolds entered a "Room to Room Cleanup" note stating: "complete."  (Doc. No. 69 at ¶ 10; Doc. No. 69-7 at 3).

Plaintiff submitted a grievance on October 26, 2024, complaining of black mold in the showers in the S Unit, among other things.  (Doc. No. 69 at ¶ 11; Doc. No. 69-3 at 1).

On October 27, 2024, Deputy Standoak entered a "Room to Room Cleanup" note, stating: "Lower level begins."   (Doc. No. 69 at ¶ 12; Doc. No. 69-7 at 4).   On November 4, 2024, Defendant Santee entered a "General Activity" note, stating: "Room to room [clean up] complete." (Doc. No. 69 at ¶ 15; Doc. No. 69-7 at 6).

R Unit.  Between December 2, 2024, and approximately December 20, 2024, Plaintiff was housed in the R Unit.  (Doc. No. 69 at ¶ 18; Doc. No. 69-5).   On December 13, 2024, Plaintiff submitted a grievance, stating: "there is black mold in every shower in this unit n in every cell in this unit. Its making me sick n my skin is breaking out."  (Doc. No. 69 at ¶ 19; Doc. No. 69-3 at 2-3).   On December 14, 2024, Plaintiff noted that on "December 14th, 2024, 10:30 a.m. they started cleaning the showers in S unit and in R unit and the finished @ 1:30 p.m. and/or 1:45 p.m." (Doc. No. 69 at ¶ 20; Doc. No. 69-3 at 3).   On December 16, 2024, Plaintiff submitted a Medical – Sick Call, stating:

> this black mold in the unit , in the shower, and in my cell is making me sick, making me cough, and making my lungs hurt extremely bad. I had surgery on both of my feet, so whenever I'm hopping back and forth from the top rack it causes me extremely bad pain in my feet. This water here is very unsafe to drink and I've become very dehydrated, can you please prescribe me w/ electrolytes so I won't die of thirst. ? ?

(Doc. No. 69 at ¶ 21; Doc. No. 69-3 at 19).

Other Areas and Plaintiff's transfer to the ADC.  Plaintiff was housed in the Q Unit from December 28, 2024, to April 10, 2025.  (Doc. No. 69 at ¶ 21; Doc. No. 69-5).  Plaintiff was transferred to the Ouachita River Unit of the ADC on August 4, 2025.  (Doc. No. 69 at ¶ 31; Doc. No. 69-2 at 2).

### B.    Qualified Immunity

Defendants argue they are entitled to qualified immunity.  Qualified immunity shields a government official from liability when his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005).  Thus, issues concerning qualified immunity are appropriately resolved on summary judgment.  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

The district court has a threshold duty to determine whether a defendant is entitled to qualified immunity.  Simon v. Jones, 166 F.4th 1137, 1141 (8th Cir. 2026).  The district court "'must take a careful look at the record, determine which facts are genuinely disputed, and then view those facts in a light most favorable to the non-moving party as long as those facts are not so blatantly contradicted by the record that no reasonable jury could believe them.'"  Id. (internal citation omitted).  Next, the court determines if the facts reveal a "constitutional violation that is clearly established."  Id.

"'A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Thurmond v. Andrews, 972 F.3d 1007, 1012 (8th Cir. 2020) (internal citation omitted). There are various ways to show that a constitutional right was clearly established': "(1) 'point to existing circuit precedent that involves sufficiently similar facts to squarely govern the officer's actions such that the officer had notice that his specific use of force was unlawful'; (2) 'present a robust consensus of cases of persuasive authority doing the same'; or (3) 'demonstrate that a general constitutional rule applied with obvious clarity to the facts at issue.'" Cameron v. City of Des Moines, No. 24-3383, 2026 WL 535206, at *2 (8th Cir. Feb. 26, 2026) (internal citation omitted).

Plaintiff asserts that the conditions of his confinement at the Detention Center violated his constitutional rights. To succeed on an Eighth Amendment claim challenging conditions of confinement, an inmate must show the alleged violation is "'objectively, sufficiently serious,'" to cause the "'denial of the minimal civilized measure of life's necessities.'" Hamner v. Burls, 937 F.3d 1171, 1178 (8th Cir. 2019), as amended (Nov. 26, 2019) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). An inmate must also show that the defendant was deliberately indifferent to the inmate's health or safety. Id.

### 1.    Mold

Plaintiff complained in an October 26, 2024, grievance about black mold in the showers in Units S and R, among other complaints. (Doc. No. 69-3 at 1). The grievance was addressed by Michael Haggerty—not a party to this action. (Id.). Plaintiff complained on December 13, 2024, about mold in all showers in the unit and every cell in the unit being contaminated with black mold. (Id. at 2). Ignacio Madrigal—not a party to this action addressed Plaintiff's December 13, 2024, grievance. (Id.). But Plaintiff noted on the following day that at 10:30 a.m. "they started

9

cleaning the showers in S unit and in R unit and they finished [at] 1:30 p.m. and/or 1:45 p.m." (Id. at 3). Hagerty responded to a January 18, 2025, grievance and a January 21, 2025, grievance in which Plaintiff complained about black mold in the shower. (Id. at 4-5, 6). When Plaintiff claimed again on January 22, 2025, that there was black mold in the shower, Hagerty responded to that grievance, as well. (Doc. No. 69-3 at 7).

Plaintiff complained on January 22, 2025, that he had no chemicals for scrubbing the shower. (Id. at 8). The grievance was not addressed by any Defendant. (Id.). Black mold was the subject of Plaintiff's January 31, 2025, grievance. (Id. at 9). Hagerty addressed the grievance. (Id.).

On December 16, 2024, Plaintiff placed a sick call. (Id. at 19). He said the mold in the shower was making him sick, making him cough, and making his lungs hurt. (Doc. No. 69-3 at 19). Erica Swan—not a party to this action—reviewed the sick call. (Id.). Swan addressed two additional sick calls placed by Plaintiff in connection with black mold. (Id. at 22-23).

None of Plaintiff's grievances concerning mold were addressed by a Defendant. And Plaintiff has not otherwise come forward with evidence establishing that any Defendant knew there was black mold in any area Plaintiff was housed or showered. On the contrary, Plaintiff has not contested the fact that each Defendant lacked such knowledge. Without evidence that any Defendant had knowledge of a condition that put his health or safety at risk, Plaintiff cannot establish that any Defendant ignored the risk.

Further, Plaintiff has not provided direct or indirect evidence that any mold present at the Detention Center was toxic and thus posed a risk to his health or safety. See Stacy v. Rice, No. 4:17-CV-153-SWW-BD, 2018 WL 1802560, at *3 (E.D. Ark. Mar. 28, 2018), report and recommendation adopted, No. 4:17-CV-153-SWW-BD, 2018 WL 1796538 (E.D. Ark. Apr. 16,

2018) (citing Erin Masson Wirth, <u>Toxic Mold in Residences and Other Buildings: Liability and Other Issues</u>, 114 A.L.R. 5th 397, § 2a (2003) ("of 100,000 species of mold, most are not dangerous")).

These uncontested facts considered must be considered in the light most favorable to Plaintiff. Even so, no reasonable jury could conclude that Defendants subjected Plaintiff to exposure to dangerous black mold.

### 2. Lockdown

Plaintiff complained in an October 26, 2024, grievance about being locked down five days a week, among other complaints. (Doc. No. 69-3 at 1). Hagerty responded to Plaintiff's grievance. (<u>Id</u>.). On January 18, 2025, Plaintiff complained that he is on lockdown from 3-5 days a week. (<u>Id</u>. at 5). Hagerty responded to this grievance, as well. (<u>Id</u>.).

Plaintiff asserted he was locked down in a cell with mold. But there is no evidence that any mold was toxic. Moreover, there is no evidence that any Defendant had knowledge of any condition—toxic mold—posing a risk to Plaintiff's health or safety but ignored that risk.

Considering the uncontested facts specific to this case in the light most favorable to Plaintiff, no reasonable jury could conclude that Defendants subjected Plaintiff to exposure to a dangerous condition arising from the alleged 5-day-a-week lockdown.

Defendants are entitled to qualified immunity on Plaintiff's personal capacity claims. Plaintiff has not demonstrated that any Defendant violated his constitutional rights.

### C. Official Capacity Claims

The uncontested evidence shows that the Detention Center had policies and practices in place to ensure living conditions were safe and sanitary. Plaintiff has not come forward with a Pulaski County policy or practice that was the driving force behind the alleged violation of his

11

rights. And Plaintiff has not demonstrated that any Defendant violated his rights. As such, Defendants are entitled to summary judgment on Plaintiff's official capacity claims.

## V.        Conclusion

Where, as here, Defendants have moved for summary judgment, Plaintiff "was required 'to discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.'" Fatemi v. White, 775 F.3d 1022, 1046 (8th Cir. 2015) (internal citation omitted). Plaintiff has not, however, met proof with proof to establish facts in dispute that would preclude partial summary judgment in Defendants' favor. Wilson v. Miller, 821 F.3d 963, 970 (8th Cir. 2016) (allegations must be substantiated with sufficient probative evidence); Bolderson v. City of Wentzville, Missouri, 840 F.3d 982, 986-87 (8th Cir. 2016) (noting plaintiff's duty to meet proof with proof in affirming summary judgment in defendant's favor). Instead, Plaintiff did not contest any material fact. As such, judgment should be entered in Defendants' favor and this case should be closed.

IT IS, THEREFORE, RECOMMENDED that:

1.        Defendants' Motion for Summary Judgment (Doc. No. 67) be GRANTED; and

2.        Plaintiff's claims against Defendants be DISMISSED with prejudice.

Dated this 27th day of May, 2026.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE

12